Case number 23-7012, David W. Noble, Jr. Appellant v. National Association of Letter Carriers, AFL-CIO, et al. Mr. Olejko for the appellant, Mr. De Chiara for the appellees. Mr. Olejko, good morning. May it please the Court, my name is Dan Olejko on behalf of David Noble. This case concerns a proper interpretation of Section 401C of the LMRDA, which requires unions to comply with all reasonable requests of any candidate to distribute campaign literature by mail or otherwise in aid of such person's candidacy. This statute serves a special purpose. It was designed to offset the incumbent's inherent advantage, including the incumbent's control over the union press. To affect this special purpose, courts must broadly interpret Section 401C to affect that purpose of the statute. But the district court adopted an overly narrow interpretation of the statute, considering it to require unions only to coordinate the delivery of a candidate's stand-alone, already printed materials. The district court also erred in concluding that Noble's request was unreasonable as a matter of law. Nothing in the pleadings, which should have been liberally construed in favor of Noble in light of his pro se status below, showed that his request was per se unreasonable. Should we just be looking at this as to the request in this case? And what I mean by that is that the union has a rule that it will allow print of the campaign materials for a particular issue. Obviously, Mr. Noble wants something earlier. And then you're also focusing on the word reasonable. So can reasonable mean we want to announce our candidacy a year earlier when, you know, they don't do the publications for campaign issues until a particular issue? Well, so I think reasonableness is the standard. And so if you're going to ask for your campaign literature in every single publication for all four years, I think that is probably unreasonable. But Mr. Noble was requesting that his ads be placed starting in the February issue leading up to the election. There was no finding that doing that in and of itself was unreasonable or was a burden on the union. The district court concluded that Noble's request was unreasonable because it supposedly altered the nature of the magazine. But the postal record allows that. It allows it once every four years. The only question is whether violating NALC's policy of having such advertisements once every four years makes Noble's request unreasonable. The Brown case makes clear that that conflict does not make it unreasonable. A request to distribute campaign literature is not per se unreasonable simply because it conflicts with a union rule. The reasonableness inquiry turns on certain factors as the Supreme Court stated in Brown, including whether the request would cause administrative or financial hardship to the union or whether it would discriminate against any other candidate. The district court didn't address either of those factors. NALC didn't argue either of those factors below. There's simply no facts in the record that would show that those factors weigh in favor of NALC. In fact, Noble's request wouldn't cause any financial hardship to the union. He offered to pay for it. It wouldn't discriminate against any other candidate. He didn't ask NALC to say, oh, post only my campaign literature but not anybody else's. He just wanted to have an equal opportunity to advertise his candidacy to the union members as the incumbents. But rather than considering these relevant factors, the district court relied on limitations placed on by other courts on two other provisions of the act, similar distribution provision and section 101, which guarantees union members free speech rights. But these provisions, they don't include a reasonableness requirement. Moreover, section 101 is made subject to reasonable rules in the union's constitution. It's not absolute. And as the Supreme Court said in the Brown case, section 101 is different than section 401 because of section 401's special purpose. Further, the limitations. How do we go about defining distribute, publish, or otherwise? Like, have you found any particular cases that define that? Because you're suggesting that the terms essentially are mutually exclusive. I don't think they're mutually exclusive. I think they're the same. I think NALC says that distribute doesn't mean publish. But the definition of publish makes it clear that publishing is a type of distribution. The definitions say that publish means to disseminate to the public, to produce or release, or distribution, to issue the work of an author. So there's no real distinction there. In fact, you know, you can distribute something in many different ways. It doesn't have to be a standalone thing. If you distribute a law journal to a bunch of law schools, you're really distributing all those articles in the journal to the law schools. They're just bound together in a single volume. And the statute itself does not restrict method of distribution. It says by mail or otherwise. It must be interpreted broadly. That broad language certainly includes a request to place an advertisement in a magazine. So while the term campaign literature isn't defined by statute, it must be also interpreted broadly. None of the definitions cited by the district court limit campaign literature to standalone already printed materials. In fact, the definition of literature means printed material of any kind, including advertising. So Mr. Noble's request to place an advertisement falls squarely within that definition. The term campaign simply describes the type of literature we're talking about. While leaflets, handbills, and circulars are certainly examples of campaign literature, there's nothing in the statute that limits campaign literature to those specific examples. Indeed, the Department of Labor agreed that emails qualify as campaign literature, and that's not disputed by now. Why is it unreasonable for the union to enforce a rule that says for all members, any campaign literature can be published on the prescribed period? That's it. And if he wants to breach that rule, isn't that an unreasonable request? It's not. Is the union's rule reasonable? Well, the issue, as the Supreme Court stated in Brown, the issue isn't whether Noble's request violated a union rule. Do you think the rule is reasonable? Even if the rule is reasonable. The Supreme Court said even if the union has a reasonable rule, it can be violated. It can be violated as long as the request itself is reasonable. And here we're not talking about some request to place, we were discussing earlier, an ad in every single issue in perpetuity. We're talking about the request to place an ad in issues leading up to an election. Why do you think that's reasonable as opposed to the union's rule? He's writing a different rule. I didn't realize the law allowed members under this provision to write a different set of rules because, in their view, it was more advantageous when, in fact, the union's rule was not unreasonable. I think the Supreme Court said that. I'll certainly go back and look at that. If you tell me that's what your reading is, I'll trust you to read it. I didn't realize that's what the Supreme Court said. That's my understanding of the Brown case, Your Honor. I, as a union member, can adopt, in my mind, a different set of rules which I think are reasonable and apply them or have them applied in place of a reasonable set of union rules. Wow, really? Is there some particular sentence you recall that says that?  But I think the key point is here. The district court did not find that it was unreasonable in and of itself to post. It didn't make any factual findings regarding a hardship to the union, regarding an expense to the union, regarding some discrimination. The only basis for the district court's decision was on the conflict with that rule. And I respectfully submit that that is not enough and that does not make Noble's request, per se, unreasonable. I'll save the rest of my time. All right. Mr. Day-Kiyori. Good morning, Your Honors. Peter Day-Kiyori from the National Association of Letter Carriers. Okay, now let me take you right back to the question I left with counsel because he does have language that the Supreme Court used, and you can tell me what you're reading of it. The text structure and purpose of Title VI all support the conclusion that our inquiry should focus primarily on the reasonableness of the candidate's request rather than on the reasonableness of the union's rule curtailing the period in which campaign literature may be mailed. That is correct. The Supreme Court articulated the test in Brown as an inquiry as to the reasonableness of the candidate's request, not the reasonableness of the union's rule. That's correct. However, here, Mr. Noble's request, well, first, did not square with the statute because it was a request for publication of his campaign ads, not a request for distribution of his literature. But even if you get past that. We can go there if you want, but that's a really strange reading of the statute. I realize what the district court did, but if that's your principal way to survive on this appeal, I don't find that persuasive. He's surely within the general parameters of the statute, statutory protections, and start talking about these various forms of publication. It gets me nowhere anyway. Go ahead. The reason his request was not a reasonable request under the statute, there were a couple of reasons. One is that it was unreasonable because it would create a constitutional harm to the union. It would compel speech by the union. The Supreme Court in the Miami Herald case said that a newspaper cannot be compelled to publish candidate content. In that case, you had a Florida statute that said a newspaper had to compel a reply by a candidate. But under the circumstances of the union's rule as it exists in publishing in a particular issue, you're allowing campaign ads to be published in that issue. So whatever the ad says, you're just posting it. You're not agreeing with them. You're just posting. Exactly that argument was made in the Miami Herald case. The argument was made that, well, it's not a First Amendment violation to require the Miami Herald to publish candidates' content because the Miami Herald is free to say whatever else it wants. It's just hosting. And the Supreme Court exactly rejected that argument. In fact, that argument can be made in every compelled speech case. Well, how do we look at the Rumsfeld case? The Rumsfeld case is a case that was not about speech. It was about content. It was about whether law schools were required by statute to allow military recruiters on campus. And both in the case itself, but also more recently this summer, the Supreme Court in the 303 creative decision addressed Rumsfeld. And in the Supreme Court's recent 303 creative decision, the Supreme Court indicated that Rumsfeld was primarily a conduct case, not a speech case. And to the extent that speech was involved, it was incidental. Does it matter that this is a newsletter by the union as opposed to your example of a newspaper owned by someone else? It does not. And let me give you an example. In the Pacific Gas case, which was a Supreme Court case holding that a public utility, a gas utility, which put out its own private newsletter, it was a house organ of the utility. It was not a commercially available newspaper. And it was required by, I think, a California regulatory agency to post a notice in its organ, in its house organ and its publication. And the Supreme Court said that was a case of unconstitutional compelled speech. So it doesn't have to be a commercially available commercial newspaper. It can be a publication of an association. And the reason is because any publication is a curated, edited, a product of curation and editing. It's the union's magazine doesn't edit itself. The union makes decisions about what it should say, how it should say it, and most importantly, what it should not say. Those are all First Amendment protected act speech activities. And so to our hold that the union has to come to compel the union to publish Mr. Noble's ads whenever he likes and would violate that First Amendment principle. And let me get to the second harm. There's a constitutional harm. But there's also the harm that if this court ruled for Mr. Noble here, it wouldn't just be Mr. Noble and it wouldn't just be the February 2021 issue. It would allow any candidate to. Put their paid ads in the union newsletter whenever they want. And each election cycle, this union has about two dozen positions up for election. And the union has about two hundred and eighty thousand members. Most of whom are eligible to run. So the effect would be. Pretty much any union member who is interested in running for office would would have a paid column in the union magazine. It would it would crowd out that it would turn the union publication. And I would invite the panel to your honors to look at the publication. It's in the record. It's a very straightforward news. You can use kind of publication. It would convert that journal into a political rag, a political of political disputation. And and the Supreme Court and the lower courts have said that it's up to the leaders of the duly elected leaders of the union to determine the content and the tone. Their findings here on administrative and financial hardship. Let me address that, Your Honor. In Brown, the Supreme Court. First of all, let me say what Brown was about. Brown is a simple case. It was about whether a union can say that to a candidate you don't have 401C distribution rights until the nominating convention. And the Supreme Court said you can't restrict 401C rights like that. There was nothing about publications. There was nothing in that case. And the two factors that the that Brown cited financial and administrative hardship were not exhaustive. Those are not the factors that apply. Those were just the relevant factors in that case. Here, since we are dealing with a publication case, there are other considerations which I've just articulated that explain their findings was my question. Sir, I'm sorry. Are there findings? Are there findings in this case on financial and administrative hardships? Well, there are no findings because this complaint was dismissed. But we don't union doesn't allege financial or administrative or does it? Our defense is not financial or just argued it. No, no, no. Then I then I mean, please try to let me clarify. And I'm looking at the Supreme Court's decision and you're pitching it to the Supreme Court's decision. That's why I'm wondering, are there findings here to support it? What I'm saying, your honor, union does not contend, for example, that the respondents request called administrative or financial hardship to the union or the district discriminated against any other candidate, etc. So they're putting the burden that the language in this case sweeps more broadly than just the facts. It is construing for a one C and it puts a pretty heavy burden on the union case. Your honor, what I'm saying is those factors that are laid out in Brown are not the exhaustive are not the only factors that a court can consider. What are the other factors in this case? The two factors that I articulate? One is the constitutional harm of compelled speech that where Miami Herald is and Pacific Gas are directly on point. So it's not a financial or administrative harm. It's something even worse. It's a constitutional harm. But so that's one. And then two is what I just I explained, which is that if if the court opened up the union publication to the two hundred thousand members of the union to publish whatever they want, whenever they want it in the publication, that's a hardship. OK, I'll put whatever label. I mean, that's a hardship. OK, then I'll take that whatever label. Take it now. There's no findings on it. Well, there are no findings. First of all, the case. I don't know that the case has been posed that way, that that's exactly what the plaintiff is saying so that you could really have a hardship burden to show. I mean, a hardship evidence to support a hardship burden. I'm sorry. My throat's killing me. So that's what I'm trying to figure out. Where are you going? What's your theory here? It's pretty good. The language in Brown is not friendly. And, you know, so I'm trying to figure out how you're meeting that burden. And the First Amendment, you know, the NLRB requires employers to post things all the time and employers don't have no First Amendment protection against that. They have to post what the NLRB says the remedy violation. I don't know why here when you have a requirement that the union, which is in an advantaged position because it's in power, the union leaders are in power. And a court finds, no, you can't use that to your advantage and block out those who want to oppose you. That's what that was, the settled law. I can't imagine a court can say, you know, he made a reasonable request to stick an ad in your newspaper. If I can address first the NLRB cases, Your Honor, in 303 Creative, the Supreme Court just this past summer addressed those cases and distinguished them. And what it said was that in those cases, the employers required to post, quote, purely factual and uncontroversial labor law information from the government. And the Supreme Court sort of cab in those cases sort of create an exception, if you will, for that sort of a situation. That is not at all the situation that the union would not be endorsing the campaign material. It would simply be posting it. It's the same in Miami Herald. The Miami Herald was not endorsing the candidates content that it would have been required by the Florida statute to publish. It wasn't endorsing it. It would have been clear to everyone in the world. It wasn't the Miami Herald's opinion. But nonetheless, the Supreme Court held that it was unconstitutional, compelled speech. And the same the newsletter in the face of a 401C prescription. Miami Herald involved that kind of legal requirement, and they're saying in the face of that, it would still be unconstitutional. In other words, the Constitution hasn't changed. I understand that. I'm saying you can view constitutional claims in context. You must view them in context. So the question would not be as an abstract matter whether you can force someone to publish something you don't want to publish. Or rather, when the law requires you to do something, is the law unconstitutional because it requires that? 401C saying in a number of situations, the union may be required to carry to allow a candidate to post messages that the union would rather not have posted. But what I'm saying, Your Honor, is if. 401C were interpreted as urged by Mr. Noble to require a union publishes ads that would be unconstitutional. So I'm not suggesting the court has 401C is unconstitutional because I think that's what 401C says that you have to allow the remedy. Suppose the union said, suppose the case here was, no, you can never post anything in our newspaper. Not once, once every four years. Never. No member, no candidate can ever post. Is that permissible? Absolutely. It was compelled speech. The union here very fairly allows every candidate in the in the issue before the election put in their ads. And the union doesn't judge what that posting is. I'm sorry, Your Honor. The union doesn't judge what that posting will be. No, of course not. But if that's the case, you keep talking about compelled speech versus posting. Right. But you don't argue that it's compelled speech for the time that you actually will publish. Because there's a big difference between being compelled to do something and doing something voluntarily. The union voluntarily decides every four years we're going to open up the issue to allow candidates to publish their campaign ads. The difference between the Miami, I have to think this through further. The difference between this kind of case in Miami, Miami Herald type cases, the unions and employers in these situations are governed by federal law. The union exists in a certain way because federal law credits this existence and gives them certain rights. The union is nothing more or less than its members. So its members have those collective rights as well. And so we're looking at an entirely different situation. It's not like someone coming into a newspaper, that person coming into the newspaper doesn't own any piece of the newspaper. The union members here do own a piece of the union. They are part of the union. And the law says as part of that collective, here's the way it operates, because the law is protecting both sides with certain rules. That's not Miami Herald. That's not the same situation. And yes, the courts probably can in some situations give a remedy, if it's appropriate, that might say you have to hold certain contact because the law allows you to have newspapers and publish them. And so we are putting certain limitations on what we're going to allow. You're stretching Miami Herald too much. Your Honor, the district court in this circuit has two times before addressed the very question here about whether or not 401C allows for publication in a journal in the Camerata case and the Jablonski case. And their question was whether 401C allows the requested remedy that the plaintiffs were seeking, the candidates were seeking there, to have their material published in the magazine, in the union's magazine. And the district court held that the statute did not allow that. It also, by the way, held that that remedy would violate their First Amendment rights. So we have. Did we endorse that view? Excuse me, Your Honor? Did we endorse that view? I don't believe that one. I'm not aware of it. If we did, then you're. No, I'm not saying. I'm not saying they're. It's an opinion. I'm not saying it's finding precedent. I'm just suggesting we have three. We have now three district court decisions over the course of several decades in the lower court, all agreeing that 401C doesn't allow the remedy or what the plaintiff is seeking here, which is a publication in the union's journal. Let me go back to the point that Mr. Noble owns the National Association of Letter Carriers. I'm saying he's part of the protected group. He's only a member. And he pays his dues. And he pays his dues, I assume. I don't know that he does. And certain rights as a consequence. Right. And the union exists because the law allows it to exist.  That is all indisputably true, Your Honor. But what is not true is that Mr. Noble or any member of the union owns the union's magazine any more than they own union's headquarters building a few blocks from here. The union as an association is recognized under law as a separate entity, as any membership association is. And just because you're a dues paying member doesn't mean you get to say what goes in the association's magazine any more than I mean, I'm a tax paying member of the United States of America, which is a democracy. But I'm not allowed to decide, you know, the color of the paint on the walls in the federal courthouse. It doesn't translate. He does have certain rights. Those are the rights granted by the statute. But as there is never in the 60 years since the statute has been has been enacted, there has not been one case that supports Mr. Noble's theory that Section 401C is a union candidate, a right to publication in the union's journal. Maybe that's because there haven't been any violations. Your Honor, if I may just address that. I don't know what to make of that. It may be that most unions understand you accommodate reason, because that's what the statute says. We're only talking about reasonableness. The statute's been around. The union has the opportunity to determine whether or not or show the court whether or not it would be unreasonable to allow this. And that's probably the way it plays out in most situations. So the fact that there's no there's no case law, and I don't know what to make of that, may be that everyone understands this. Well, there's no there have been many, many, many elections in the last 60 years. Right. And it may be that other unions reasonably accommodate requests. If you don't know what reasonable would be. I mean, I money. I'm trying to think this through in terms of your First Amendment. It's very your First Amendment argument. It's very sweeping. Well, you've conceded that you're saying this doesn't exist. You're saying the statute does not exist. That's a big step. Thank you. All right. Thank you. Why don't you take two minutes? I want to address a few of now arguments here with respect to the unreasonable. So the supposed harms the district court didn't make any findings supporting a First Amendment arm here. This record didn't make any finding that implying with Mr. Noble's request would somehow open the floodgates. And now didn't argue that below. And and certainly the district court didn't find that it would necessarily turn the publication campaign literature. But but turning to the actual arguments, this isn't a free speech issue. Noble's request doesn't require now to say anything. Noble's not asking now to create anything for him or any messaging. He's just asking now to post is already made campaign advertisement in the magazine. It's obvious if you look at the advertisements that it's not now speech. You look at appendix number fifty five and fifty six. There's some examples of Mr. Noble's campaign literature. They're clearly not pine elk. Noble's interpretation. The statute would merely require now to host candidate speech, which is permissible since it doesn't prevent now from responding to that doesn't dilute or interfere with the incumbent own messaging. Further, this case is unlike Miami Herald. It's unlike the the case. It's unlike Pacific Glass. Those cases all require newspapers and newsletters to publish particular dissenting views. Noble's interpretation of the statute would not apply to only certain dissenting viewpoints. He under his interpretation of the statute, any candidate incumbent dissenter could request make the same request. It applies broadly to all candidate viewpoints. So those cases are plainly distinguishable, including for the reason that just the union publications completely different character than a commercial publication. But here, the First Amendment depends on critical facts regarding postal record facts that were not part were actually not before the district court. The Miami Herald case was premised on the statute's intrusion into the role of editors who make critical decisions about the content of the paper. And I believe now just made an argument saying, oh, the postal record, they have editors. They make these critical decisions. Well, there is nothing in the record that supports that because this case was dismissed at the rule 12B6 stage and nothing in Noble's leading support that. It would be improper to look outside the pleadings at this stage, especially for the first time on appeal. In the 303 case, I will just say the party stipulated to these critical facts that aren't before you right now. They stipulated that the plaintiff's website was original and customized, and it contributed to the overall message of the plaintiff. They also stipulated that the websites and graphics of the plaintiffs were expressive. None of those facts are before us right now. There's no funding, and this court should not resolve those factual issues for the first time on appeal. No need to wind it up. I'll wind it up. I just wanted to say with the with the floodgates, there's no facts based on the record that this is going to somehow open the floodgates. Nothing in the complaint supports it. It's not a proper consideration on a motion to dismiss. And finally, this is not going to change the character of the magazine. The magazine already allows these types of campaign literature. We just request that they allow them in a reasonable time period surrounding the election besides just that one issue. Thank you. Thank you.
judges: Henderson, Childs, Edwards